**COMMONWEALTH of Pennsylvania, Appellee**

v.

**John M. CAHILL, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 27, 2014.
Filed June 24, 2014.

---

John M. Cahill, Jr., appellant, pro se.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, P.J.E., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.:

In this case, we confront the heretofore unanswered question of whether a token is a ticket. We do so for the purpose of reviewing appellant John Cahill's conviction for the summary offense of unauthorized sale or transfer of tickets—disposition by passenger, 18 Pa.C.S. § 6910(b). For the reasons that follow, we must conclude that a token is not a ticket. Consequently, we vacate Cahill's March 11, 2013 judgment of sentence, which was imposed

after he was convicted under subsection 6910(b) for attempting to sell tokens.

On November 2, 2012, Southeastern Pennsylvania Transportation Authority ("SEPTA") police officer Lynn Perrone was patrolling the Margaret Orthodox SEPTA Station in full uniform. At approximately 2:50 p.m., Officer Perrone descended the westbound stairwell of that station and observed Cahill asking passersby if they wanted to buy SEPTA tokens. Knowing that only SEPTA employees were permitted to sell such tokens, Officer Perrone approached Cahill and informed him that he was not permitted to sell the tokens. Officer Perrone then instructed Cahill to leave the vicinity. When Cahill disobeyed the command to leave, Officer Perrone asked Cahill for his identification, which he refused to provide. Officer Perrone then placed Cahill in custody and patted him down. During the patdown, Officer Perrone located Cahill's identification card as well as a pint-sized bottle of liquor. Officer Perrone issued a citation to Cahill, charging him with the unauthorized sale of tickets and a violation of Philadelphia Ordinance 10–604, which prohibits carrying open alcoholic containers in the public right-of-way.

On January 11, 2013, Cahill was convicted, *in absentia,* of both charges in the Philadelphia Municipal Court. On February 11, 2013, Cahill filed a summary appeal. A *de novo* summary trial was scheduled for March 11, 2013 in the Court of Common Pleas of Philadelphia County. On that date, Cahill filed a *pro se* motion to suppress the physical evidence seized as a result of his detention, which Cahill averred had violated his constitutional rights because the stop allegedly lacked probable cause. On that same date, the trial court held a hearing on the suppression motion, during which only Officer

* Retired Senior Judge assigned to the Superior Court.

Perrone testified. After the hearing, the trial court denied Cahill's motion. The parties proceeded directly to a *de novo* trial, which was based in large part on the testimony incorporated into the trial from the suppression hearing. However, Cahill conducted additional cross-examination of Officer Perrone, during which Officer Perrone admitted that the items that Cahill was attempting to sell were tokens, not tickets.

At the conclusion of the trial, the trial court convicted Cahill of unauthorized sale of tickets, but acquitted him of the alcohol ordinance charge. Cahill was assessed a $300 fine and court costs.

On April 10, 2013, Cahill filed a *pro se* notice of appeal. On April 15, 2013, the trial court directed Cahill to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Cahill timely complied. On July 9, 2013, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a).

Cahill raises the following four questions for our consideration:

1. Did the trial court err when it denied [Cahill's] motion to suppress in contradiction to the Pennsylvania Rules of Criminal Procedure, Article I, Section 8 of the Pennsylvania Constitution, and the Fourth and Fourteenth Amendments [to] the United States Constitution?

2. Was the verdict not supported by sufficient evidence?

3. Did the trial court commit error in its imposition of a fine without first ascertaining [Cahill's] financial condition?

4. Did the trial court err by not affording [Cahill] his right to allocution before the imposition of sentence?

Brief for Cahill at 4. Because we conclude that a token is not a ticket for the purposes of subsection 6910(b), and accordingly vacate Cahill's conviction and judgment of sentence, we address only Cahill's second stated issue.

Our standard of review for a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa.Super.2011) (citing *Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa.Super.2010)).

As is always the case in statutory construction, our inquiry must begin with the express words of the statute enacted by

our General Assembly. Cahill was convicted of unauthorized sale or transfer of tickets under subsection 6910(b). That subsection states:

> **(b) Disposition by passenger.**—Every person, being a passenger for hire, to whom has been issued a nontransferable **ticket** valid in full or part payment of fare for passage upon any public conveyance operated upon the same or any other line or route, or any person into whose possession any such **ticket** may come, who shall sell, barter, give away, or otherwise transfer the same, and every person who shall offer for passage any such **ticket** which was not issued to any person so offering it, is guilty of a summary offense.

18 Pa.C.S. § 6910(b) (emphasis added). It is undisputed that Cahill was not apprehended for selling tickets. Rather, he was selling tokens. Thus, we must consider whether the term "ticket," as used in subsection (b), encompasses items such as tokens or other modes of proof of payment for a fare on any public transportation or conveyance. For guidance, we turn to our canons of statutory construction.

When construing a term utilized by the General Assembly in a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id.* However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Id.* § 1903(a). In other words, if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday us-

age for the purpose of effectuating the legislature's intent. Additionally, we must remain mindful that the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1).

The General Assembly's intent in enacting subsection 6910(b) is clear: The General Assembly intended to criminalize the resale or redistribution of "tickets" for passage upon public conveyances by passengers (or others) who are not otherwise authorized to do so. At first blush, Cahill's conduct appears to have violated the statute by confounding its intent. However, our canons of statutory construction permit such a conclusion only if that conclusion comports with the clear language utilized by the General Assembly, or if the term "ticket" is ambiguous. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Therefore, we must determine whether the term "ticket," by its common and approved usage, includes tokens, or whether the term is ambiguous such that we may assign a meaning to the term that comports with the General Assembly's apparent intent. For the reasons that follow, we hold that the term "ticket" is not ambiguous, and that its common everyday usage does not include tokens. Thus, we are prohibited from giving "ticket" a more expansive definition in an effort to effectuate the General Assembly's perceived intent. *Id.*

The American Heritage College Dictionary defines "ticket" as "[a] paper slip or card indicating that its holder has paid for or is entitled to a specific service, right, or consideration." *American Heritage College Dictionary* 1439 (4th ed. 2002). Similarly, Merriam–Webster's Dictionary defines "ticket" as either "a piece of paper that allows you to see a show, participate

in an event, travel on a vehicle, etc.," or "a card or piece of paper that shows that you are participating in a contest, raffle, etc." *Merriam–Webster's Online Dictionary*, http://www.merriam-webster.com/ dictionary/ticket (last visited June 4, 2014). Black's Law Dictionary defines "ticket" as "[a] certificate indicating that the person to whom it is issued, or the holder, is entitled to some right or privilege." *Black's Law Dictionary* 1490 (7th ed. 1999).

On the other hand, the American Heritage College Dictionary defines a "token" in this context as "a piece of stamped metal used as a substitute for currency." *American Heritage College Dictionary* 1447 (4th ed. 2002). Merriam–Webster's Dictionary defines a "token" as either "a round piece of metal or plastic that is used instead of money in some machines," or "an object that looks like a coin and is used in place of a coin." *Merriam–Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/token (last visited June 4, 2014). Black's Law Dictionary does not provide a definition of "token" that is pertinent to the tokens that Cahill attempted to sell in this case.

From these basic definitions, we discern a few determinative points. First, the word "ticket" is not ambiguous. The term has a very specific meaning upon which reasonable people would not disagree. A ticket is a slip of paper that entitles the holder to enter an event, board a bus, etc. A ticket endows the holder with certain rights or privileges. Second, the terms "ticket" and "token" are not interchangeable. A reasonable person understands that, in order to gain entry into a movie theater or a professional baseball game, a person must possess a ticket and must present that ticket to the relevant personnel to gain entry into that movie or game. The same cannot be said for a token. The

terms differ significantly, and to a degree such that we cannot conclude that, when the General Assembly used the word "ticket" it also meant "token." By their very definitions, the terms differ in form and in substance. A "ticket" is a slip of paper or cardboard. A "token" is a piece of metal, often stamped or embossed with some identifying marks. A "ticket" is used to demonstrate proof of purchase and to gain entry or access to certain rights or privileges. A "token" is most often used as a substitute for currency or coins, and frequently as a form of currency to use in vending or video machines. Simply put, the terms differ in most common usages. We are not free blithely to ignore these differences.

The word "ticket" is a clear and unambiguous term. We cannot disregard its generally understood meaning in pursuit of the spirit of subsection 6910(b), although it would be easy for us to do so. It would not be difficult to expand what we discern to be the General Assembly's intent to include the resale or redistribution of all forms of proof of purchase of a fare for public transportation. Under such an expansive interpretation of the General Assembly's intent, common sense alone might seem to dictate that a token would fall within that broad spectrum. However, such a conclusion is untenable. First, as noted, our General Assembly has instructed that: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Second, and perhaps even more important, it is clear that the General Assembly's intent was **not** so broad. Inasmuch as the lawmakers used the unambiguous term "ticket," we can only conclude that they meant what they said. Tempting as it may be to expand the definition of "ticket" to include tokens under the circumstances of this case, that simply

is not our role as a court. *See* Oliver Wendell Holmes, Jr., *"The Theory of Legal Interpretation,"* 12 HARV. L. REV. 417, 419 (1898) ("We do not inquire what the legislature meant; we ask only what the statute means."). "[W]here the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction. Any legislative oversight is for the General Assembly to fill, not the courts." *Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles,* 615 Pa. 6, 40 A.3d 1186, 1194–95 (2012) (citations omitted).[1]

We may not arrogate to ourselves some magical power judicially to "improve" the work done by the legislature. Had the General Assembly intended subsection 6910(b) to be read as broadly as is sought here, it could have stated as much within the statutory language. The General Assembly did not do so. We can only conclude that the decision not to do so indicates that the General Assembly did not intend subsection 6910(b) to cover anything other than tickets.

Importantly, our conclusion is supported by reviewing subsection (a) of the very same statute. That provision reads as follows:

> (a) **Sale of tickets.**—A person, not possessed of authority, is guilty of a misdemeanor of the third degree if he sells, barters, or transfers, for any consideration whatsoever, **the whole or any part of any ticket or tickets, passes, or other evidences of the title of the holder to travel on any public conveyance,** whether the same be situated, operated, or owned within or without the limits of this Commonwealth.

18 Pa.C.S. § 6910(a) (emphasis added). The highlighted language, which is found in the statutory subsection immediately preceding the subsection at issue in this case, undeniably demonstrates that, when the General Assembly intended to penalize the sale of a broad array of forms of title, it clearly codified that intent by expressly listing forms other than tickets alone. The same cannot be said for the summary offense described in subsection 6910(b), which lists tickets only. Considering these two provisions *in pari materia,* there simply is no basis upon which we may leap the chasm and conclude that the General Assembly intended subsection 6910(b) to criminalize anything other than the unauthorized sale of tickets, as such.

A final note is in order. Let us assume for a moment that the term "ticket" was considered to be ambiguous in this context. Were that the case, we nonetheless would be bound by statute and decisional precedent to apply the rule of lenity and to construe the term strictly. *See* 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. McCoy,* 599 Pa. 599, 962 A.2d 1160, 1168–69 (2009). In *McCoy,* our Supreme Court delineated a court's obligations when construing a penal statute that contains an ambiguous term:

> [P]enal statutes "shall be strictly construed." 1 Pa.C.S. § 1928(b)(1); *see also Commonwealth v. McClintic* [589 Pa. 465], 909 A.2d 1241, 1251 (Pa.2006). Of course, the mandate to construe penal statutes narrowly does not override the "general principle that the words of a statute must be construed according to their common and approved usage," and does not require [courts] to give the words of a penal statute their "narrow-

---

1.  As Judge Learned Hand wrote: "[i]t is always a dangerous business to fill in the text of a statute from its purposes, and, although it is a duty often unavoidable, it is utterly unwarranted unless the omission from, or corruption of, the text is plain." *Harris v. Commissioner,* 178 F.2d 861, 864 (2d Cir.1949).

est possible meaning." *Commonwealth v. Booth* [564 Pa. 228], 766 A.2d 843, 846 (Pa.2001). The mandate "does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of the doubt." *Id.* (internal citation omitted); *see also Commonwealth v. Dickson* [591 Pa. 364], 918 A.2d 95, 108–09 (Pa.2007) (statute imposing mandatory minimum sentence for person possessing a firearm during robbery strictly construed to apply only to person carrying a gun, not unarmed accomplice or co-conspirator); *Commonwealth v. Huggins* [575 Pa. 395], 836 A.2d 862, 867–68 (Pa.2003) ("gross negligence" *mens rea* requirement of involuntary manslaughter statute construed to require recklessness); *Commonwealth v. Tate* [572 Pa. 411], 816 A.2d 1097, 1098 (Pa.2003) (statute prohibiting "luring" child into motor vehicle does not encompass inchoate offense of attempting to lure child into vehicle); *Commonwealth v. Scolieri* [571 Pa. 658], 813 A.2d 672, 677–78 (Pa.2002) (Superior Court improperly broached scope of statute prohibiting sale of alcoholic beverages to minors by construing "intentionally or knowing" to mean "knew or should have known"); *Commonwealth v. Berkowitz* [537 Pa. 143], 641 A.2d 1161, 1164–65 (Pa.1994) (rape statute's "forcible compulsion" element requires showing beyond lack of consent); *Commonwealth v. Scarpone* [535 Pa. 273], 634 A.2d 1109, 1112–13 (Pa.1993) (conviction under statute prohibiting operating waste disposal facility without permit overturned because statute does not encompass illegal alteration of facility).

*McCoy,* 962 A.2d at 1168–69 (citations modified). Hence, even if "ticket" were ambiguous, we would be required to give it the narrow meaning that we ascribe to it above, and not to engraft upon it an expansive meaning that necessarily would include tokens.

In sum, a token is not a ticket for purposes of subsection 6910(b). Because (1) a token is not a ticket, (2) Cahill was selling tokens, and (3) subsection 6910(b) does not criminalize the sale of tokens, the evidence plainly was insufficient to sustain Cahill's conviction. Therefore, we must reverse Cahill's conviction, and we must vacate his judgment of sentence.

Judgment of Sentence vacated. Jurisdiction relinquished.