J-S58012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANA MATTHEW HALL, | |
| Appellant | No. 1146 WDA 2013 |

Appeal from the Judgment of Sentence May 2, 2013
in the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0007934-2012

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED NOVEMBER 06, 2014**

Appellant, Dana Matthew Hall, appeals from the judgment of sentence imposed following his jury conviction of two counts each of criminal attempt to commit homicide, aggravated assault, and recklessly endangering another person, and one count each of assault of a law enforcement officer, aggravated assault (serious injury to police), criminal trespass, criminal conspiracy, theft by unlawful taking, criminal attempt to commit theft by unlawful taking, and receiving stolen property.[1] We affirm.

We take the factual history of this case from the trial court's April 11, 2014 opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A §§ 901(a), 2702(a)(1), 2705, 2702.1(a), 2702(a)(2) and (c), 3503(a)(1)(i), 903(a)(1), 3921(a), 901(a), and 3925, respectively.

On the evening of June 6, 2012, Appellant . . . prepared to steal car parts by inspecting and purchasing tools at a local WalMart with his girlfriend, Deasia Burgess, and his brother, Andre Whitley. Once Appellant secured all of the materials he needed, Appellant and Whitley drove to the Value Auto Service located in the 2300 block of Bowman Avenue, McKeesport, Allegheny County, in Appellant's Cadillac. Burgess followed in her vehicle.

Appellant, Whitley, and Burgess parked their vehicles outside the Value Auto Service parking lot at approximately 3:00 A.M. on June 7. Appellant and Whitley entered the fenced-in lot and began to remove lug nuts, rims, hubcaps, and wheels from a Mercury sedan. At some point Burgess left her vehicle and entered Appellant's Cadillac. Shortly after 3:00 A.M., Patrick Massung, whose home on Bowman Avenue overlooked the Value Auto Service lot, noticed Appellant and Whitley near the Mercury and called the police to report suspicious activity in the lot.

McKeesport Police Officers Jeremy Zuber and Stephen Kondrosky, in separate [marked police] vehicles [and in uniform], responded shortly thereafter and first arrived on Highland Avenue, which runs parallel to and is elevated above Bowman Avenue. The officers proceeded slowly on Highland Avenue with their search lights pointed down the side streets. Appellant and Whitley noticed the police vehicles and ran to Appellant's vehicle. Appellant directed Burgess to drive on Bowman Avenue, toward the Duquesne Bridge and then loop back around to Highland Avenue. At the same time, Officers Zuber and Kondrosky proceeded to Bowman Avenue and quickly arrived at the Value Auto Service lot. Upon arrival, Massung came from his home and notified the officers of the direction of the fleeing Cadillac. Officer Kondrosky pursued the vehicle in his patrol car while Officer Zuber remained on scene with Massung.

Once on Highland Avenue, Appellant directed Burgess to park "above" Value Auto Service and took the keys from her. Appellant retrieved an FEG rifle from the trunk and proceeded to a carport that overlooked the Value Auto Service lot. From that position Appellant shot at Officer Zuber and Massung seven times as they stood in the parking lot. The shots struck the asphalt around the two men, spraying debris onto Officer Zuber

and Massung. They took cover behind the marked patrol vehicle and Burgess's Lincoln. At least one of the bullets ricocheted into the service building itself.

Once the shooting stopped, Officer Zuber placed a radio call of shots fired. Officer Kondrosky returned to the scene, met Officer Zuber, and they proceeded in their respective vehicles to the 2300 block of Highland Avenue, which they perceived to be the origin of the fired shots. At the same time, Appellant hurried back to his vehicle, returned the rifle to the trunk, but essentially closed the trunk with the keys inside. Unable to drive away, Appellant, Burgess, and Whitley attempted to hide within the vehicle.

Officers on scene quickly recovered five spent cartridge casings on a hillside between Highland and Bowman Avenues near a carport, and a K-9 unit was dispatched at that recovery site. From that hillside, the K-9 unit followed a scent trail to the nearby carport on Highland Avenue, where he picked up a strong human scent, indicating that someone had remained in that location for an extended period of time. The K-9 then traced that scent to Appellant's vehicle parked on Highland Avenue, where Appellant, Burgess, and Whitley were found and detained. The vehicle matched Massung's description of the vehicle that had earlier fled from Bowman Avenue.

A search of the interior of Appellant's vehicle revealed various parts from the Mercury and the tools Appellant used to remove them; other parts, as well as the FEG rifle, were located in the trunk. The FED rifle had a live cartridge in the chamber, a magazine attached with nine cartridges, and was found with the stock in an extended position. A total of seven spent cartridge casings were recovered on the hillside between Highland and Bowman Avenues, and a copper jacket from a projectile was recovered from an exterior wall of the Value Auto Service building. The recovered rifle was test fired and it was determined that the spent casings and bullet jacket were discharged from the recovered rifle. . . .

(Trial Court Opinion, 4/11/14, at 4-8) (record citations and footnote omitted).

Appellant proceeded to trial on January 31, 2013, and the jury found him guilty of the above-stated offenses on February 5, 2013. On May 2, 2013, the trial court sentenced Appellant to a term of not less than twenty nor more than forty years' incarceration on the assault of a law enforcement officer count, and a consecutive term of not less than five nor more than ten years' incarceration on the criminal attempt to commit homicide count.[2] The court imposed no further penalty on the remaining offenses. On May 13, 2013, Appellant filed a post-sentence motion, which the trial court denied. This timely appeal followed.[3]

Appellant raises the following issues for our review:

1. Whether the [c]ourt of [c]ommon [p]leas erred as a matter of law when it found that there was sufficient evidence to satisfy the intent to kill element necessary to support the conviction of [Appellant] for [a]ttempted [h]omicide[?]

2. Whether the [c]ourt of [c]ommon [p]leas erred as a matter of law when it found that there was sufficient evidence to satisfy the specific intent element necessary to support the conviction of [Appellant] for [a]ggravated [sic] [a]ssault of [a l]aw [e]nforcement [o]fficer[?]

_____

[2] The sentence for assault of a law enforcement officer was the mandatory minimum term of incarceration. *See* 42 Pa.C.S.A. § 9719.1(a); (*see also* Trial Ct. Op., at 12). The sentence for attempted homicide was in the mitigated range. (*See* Trial Ct. Op., at 12).

[3] The trial court did not order Appellant to file a Rule 1925(b) concise statement of errors, but Appellant filed a statement on July 11, 2013. *See* Pa.R.A.P. 1925(b). The court entered a Rule 1925(a) opinion on April 11, 2014. *See* Pa.R.A.P. 1925(a).

3.  Whether the [s]entence imposed on [Appellant] by the [c]ourt of [c]ommon [p]leas is so grossly disproportionate to the offense for which he was convicted as to violate the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment[?]

(Appellant's Brief, at 6).

Appellant's first and second issues on appeal challenge the sufficiency of the evidence to support his attempted homicide and assault of a law enforcement officer convictions. (*See id.*) We address these issues together for ease of disposition, and note that Appellant provides the same analysis in support of both issues in his brief. (*See id.* at 19-20).

Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014) (citations omitted).

In his first issue, Appellant argues that the Commonwealth produced insufficient evidence to support his criminal attempt to commit homicide convictions. (**See** Appellant's Brief, at 15-19). In his second issue, Appellant contends that the Commonwealth failed to produce sufficient evidence to support his assault of a law enforcement officer conviction.[4] (**See id.** at 19-20). In support of both claims, Appellant argues that the Commonwealth failed to establish that he intended to kill or injure Officer Zuber or Mr. Massung when he fired the rifle. (**See id.** at 15-20). Specifically, he asserts that the evidence presented at trial established that he fired the rifle randomly into space, and not at Officer Zuber and Mr. Massung. (**See id.** at 15-16). Appellant also claims that he lacked the requisite intent because he had ample opportunity to kill or injure the men, but did not do so. (**See id.** at 18). Appellant's first and second issues do not merit relief.

Under the Pennsylvania Crimes Code, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which

_____

[4] Although Appellant repeatedly states that he is challenging the "Aggravated Assault of Law Enforcement Officer" conviction (Appellant's Brief at 6; Rule 1925(b) Statement, 7/11/13, at 1), it appears that he is challenging his assault of a law enforcement officer conviction, rather than his conviction for aggravated assault. (**See** Trial Ct. Op., at 10-11; Commonwealth's Brief, at 11 n.2; Order of Sentence, 5/02/13, at 1 (sentencing Appellant to a term of not less than twenty nor more than forty years' incarceration on the assault of law enforcement officer count, and no further penalty on aggravated assault counts)).

constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). "For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal." *Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa. Super. 2005) (citation omitted).

> If a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The Commonwealth may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from circumstantial evidence.

*In re R.D.*, 44 A.3d 657, 678 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012) (citations omitted).

The Crimes Code defines the crime of assault of a law enforcement officer as follows:

> **(a) Assault of a law enforcement officer in the first degree.**—A person commits a felony of the first degree who attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm.

18 Pa.C.S.A. § 2702.1(a).

To convict a defendant of this offense, the Commonwealth must prove:

> (1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3)

the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm.

* * *

[A finding that a law enforcement officer did not actually suffer bodily injury] does not end our inquiry since . . . the Commonwealth may establish a *prima facie* case under Section 2702.1 if the Commonwealth sets forth evidence Appellee attempted to cause such bodily injury.

 . . . [C]riminal attempt under Section 2702.1 requires a showing of some act, albeit not one actually causing bodily injury, accompanied by an intent to inflict bodily injury upon a law enforcement officer by discharging a firearm.

* * *

The intent for attempt may be shown by circumstances which reasonably suggest that a defendant intended to cause [bodily] injury. . . . [I]n order to prove an attempt under Section 2702.1, the Commonwealth must demonstrate both a substantial step plus an intent to cause bodily injury to a law enforcement officer by discharging a firearm.

*Commonwealth v. Landis*, 48 A.3d 432, 445-46 (Pa. Super. 2012) (*en banc*) (citations and quotation marks omitted).

Here, the testimony at trial established that Appellant noticed marked police vehicles approaching the Value Auto Service lot while he and Mr. Whitley were in the process of removing lug nuts, rims, hubcaps, and wheels from the Mercury sedan. (**See** N.T. Trial, 1/31/13-2/01/13, at 61-62, 142, 156, 196, 215, 336, 346-47). Appellant and Whitley ran into Appellant's vehicle but did not flee the area. (**See id.** at 153, 196, 336). Instead, Appellant directed Ms. Burgess to drive to a nearby street overlooking the

car lot.  (**See** N.T. Trial, 2/01/13, at 196-97, 337, 348, 355).  Ms. Burgess complied, and Appellant watched Officer Zuber and Mr. Massung converse from a carport overlooking the Value Auto Service lot.  (**See id.** at 337-38, 342).  Appellant retrieved a rifle from the trunk of his vehicle and shot at Officer Zuber and Mr. Massung seven times.  (**See** N.T. Trial, 1/31/13-2/01/13, at 115, 157, 197, 338).  The bullets fired from the rifle struck the asphalt within four to five feet of Officer Zuber and Mr. Massung, narrowly missing them before they took cover behind the officer's vehicle.  (**See** N.T. Trial, 1/31/13, at 115-117).

Appellant testified in his defense and stated that he did not intentionally aim the firearm at Officer Zuber and Mr. Massung, and that he did not intend to hurt or kill anyone.  (**See** N.T. Trial, 2/01/13, at 339, 345, 349, 353, 357).  He explained that he impulsively fired the rifle into space to create a diversion, because he wanted the officer to leave the Value Auto Service lot before seizing evidence linking him to theft of the Mercury car parts.  (**See id.** at 338-39, 345, 349, 353).

Based on the foregoing, and viewing the evidence in the light most favorable to the Commonwealth, **see Cahill**, **supra** at 300, we conclude that the jury could have reasonably found that Appellant took a substantial step toward intentionally killing Officer Zuber and Mr. Massung.  **See In re R.D.**, **supra** at 678.  Likewise, the jury could have reasonably found that Appellant took a substantial step toward intentionally causing bodily injury to Officer Zuber with knowledge that he was a police officer while the officer

was acting in the performance of his duties. **See Landis**, **supra** at 445-46.
The jury did not credit Appellant's version of events that he shot the firearm
into space, and it was within its province as fact-finder to assess the
credibility of the witnesses and accept all, part, or none of the evidence.
**See Cahill**, **supra** at 300. Accordingly, Appellant's first and second issues
challenging the sufficiency of the evidence do not merit relief.

In his third issue, Appellant argues that the mandatory minimum
sentence of not less than twenty nor more than forty years' incarceration
imposed on the assault of a law enforcement officer count[5] is grossly
disproportionate his offense and therefore violates the Eighth Amendment of
the United States Constitution. (**See** Appellant's Brief, at 20-21). Appellant
claims his sentence is cruel and unusual and "does not fit the crime" because
Officer Zuber was not injured and the crime had "no real impact upon the
victim or any other persons."[6] (**Id.** at 21). We disagree.

---

[5] Appellant again references his aggravated assault conviction in his
argument on this issue. (**See** Appellant's Brief, at 21). However, as
previously noted, the court sentenced him to the term of incarceration at
issue for the offense of assault of a law enforcement officer; he received no
further penalty for aggravated assault. (**See** Sentence Order, 5/02/13, at
1).

[6] Appellant makes no claim that 42 Pa.C.S.A. § 9719.1(a) is unconstitutional
on its face. (**See** Appellant's Brief, at 20-21). He fails to acknowledge that
the trial court sentenced him in accordance with the mandatory minimum
sentence provision. (**See id.**).

Appellant's claim challenges the legality of his sentence. **See Commonwealth v. Knox**, 50 A.3d 732, 741 (Pa. Super. 2012), *appeal denied*, 69 A.3d 601 (Pa. 2013) (citation omitted). "Therefore[,] our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary." **Commonwealth v. Martz**, 42 A.3d 1142, 1145 (Pa. Super. 2012), *appeal denied*, 57 A.3d 69 (Pa. 2012) (citation omitted).

In addressing Appellant's claim, we are mindful that "[w]hile it is the judiciary's function to impose sentence, it is the legislature's function to enact criminal laws, define the elements of crimes, and set the punishments imposable for criminal conduct." **Commonwealth v. Carr**, 543 A.2d 1232, 1235 (Pa. Super. 1988), *appeal denied*, 554 A.2d 506 (Pa. 1988) (citation omitted).

The Eighth Amendment to the United States Constitution provides that that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Amend. VIII.

> The Cruel and Unusual Punishment clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. However, the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime.
>
> In [**Commonwealth v.**] **Barnett** [50 A.3d 176 (Pa. Super. 2012)], we reaffirmed the principle that, before we determine whether a statute imposes an unconstitutional punishment, the challenging party must establish an inference

that the challenged statute is grossly disproportionate to the conduct to be punished.

*Commonwealth v. Elia*, 83 A.3d 254, 268 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014) (quotation marks and some citations omitted).

Here, in his one-and-one-half-page discussion of this issue, Appellant fails to develop any meaningful argument as to how the twenty-year mandatory minimum sentence was grossly disproportionate to his actions in shooting the rifle at Officer Zuber. Instead, he focuses only on the fact that the bullets he shot from the rifle did not actually hit Officer Zuber, and the officer drove away from the scene uninjured. (*See* Appellant's Brief, at 21). However, the offense of assault of a law enforcement officer, by its plain terms, encompasses an **attempt** to cause bodily injury to a police officer; the officer need not sustain an actual injury. *See* 18 Pa.C.S.A. § 2702.1(a); *Landis*, *supra* at 445. The trial court did not have the authority to impose a sentence less severe than the mandatory minimum mandated by the legislature. *See* 42 Pa.C.S.A. § 9719.1(a)-(b).[7] The court, in imposing the

_____

[7] Section 9719.1 states in pertinent part:

> **(a) Mandatory sentence.**—A person convicted of the following offense **shall** be sentenced to a mandatory term of imprisonment as follows:
>
> 18 Pa.C.S.[A.] § 2702.1(a) (relating to assault of law enforcement officer)—not less than 20 years.

*(Footnote Continued Next Page)*

- 12 -

sentence, noted that it had considered the pre-sentence investigation (PSI) report, the sentencing guidelines, and the in-court statements of Appellant and his family. (*See* N.T. Sentencing, 5/02/13, at 3, 43). The court stated:

> [Appellant could have left the area of the Value Auto Service lot entirely but] did choose to remain and fired seven shots and was convicted by a jury of his peers[.] . . .
>
> The [c]ourt has no question in its mind that when [Appellant] discharged that weapon, that he knew he was—that Officer Zuber was, in fact, a police officer. That was by virtue of him being a uniformed officer at the time and also by virtue of the police car, the marked unit, that he was driving.
>
> . . . There's no question in my mind and the jury's mind, obviously, that he was shooting at an officer of the law as well as a civilian who was in the presence of that police officer. And, of course, the punishment must fit that circumstance rendered by 12 citizens of this community and as called for by the Legislature of Pennsylvania.

*(Footnote Continued)* ————————————————

> **(b) Authority of court in sentencing.—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a)** or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. . . .
>
> **(c) Appeal by Commonwealth.**—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

42 Pa.C.S.A. § 9719.1(a)-(c) (emphases added).

* * *

> . . . [T]he overriding and important consideration is the protection of the community and the impact of this crime on the community and the fear engendered and the impact on Mr. Massung as well as [Officer Zuber] and his colleagues as they go about their daily business in the community.

(*Id.* at 44-46).

Upon review, we find that the record supports the trial court's sentencing determination. The record reflects that Appellant shot at Officer Zuber seven times while the officer was investigating a theft Appellant committed, and that the bullets narrowly missed him. Whether the bullets struck Officer Zuber or not, this is the type of conduct that the legislature sought to deter and punish by establishing a mandatory minimum sentence. *See* 42 Pa.C.S.A. § 9719.1; *see also Carr*, *supra* at 1235. The sentence is not grossly disproportionate to the crime merely because Appellant missed his intended target and Officer Zuber managed to escape unscathed. Because Appellant has failed to establish a reasonable inference that application of the statute is grossly disproportionate to his conduct, his challenge to the sentence fails. *See Elia*, *supra* at 268. We discern no error of law, and conclude that the court appropriately applied the mandatory minimum term of incarceration for Appellant's offense. *See Martz*, *supra* at 1145. Appellant's third issue on appeal does not merit relief.

Judgment of sentence affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/06/2014