J-S63033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ISIAH GARRETT, | |
| Appellant | No. 192 MDA 2014 |

Appeal from the Judgment of Sentence April 5, 2013
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0002964-2011

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 14, 2015**

Appellant, Isiah Garrett, appeals from the judgment of sentence imposed following his jury conviction of second-degree murder, robbery (two counts), conspiracy to commit robbery, simple assault, and recklessly endangering another person.[1]  Counsel for Appellant has petitioned to withdraw on the ground that Appellant's issues on appeal are wholly frivolous.[2]  We grant counsel's petition to withdraw and affirm the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903(c), 2701(a)(3), and 2705, respectively.

[2] *See Anders v. California*, 386 U.S. 738 (1967); *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

This case arises from the shooting death of Kendrell Washington. The relevant facts and procedural history are as follows. On November 16, 2010, at approximately 8:30 p.m., Mr. Washington and Paris Stanback agreed to meet to purchase and smoke a $5.00 bag of marijuana. They met at a convenience store at the corner of 16th and Market Streets in Harrisburg. As the men walked north on 16th street, Appellant approached them holding a revolver. He pointed the gun at them and demanded that they "give up the weed." (N.T. Trial, 2/26/13, at 67). He ordered them to "get the fuck on the ground." (*Id.*). Mr. Washington told Appellant that they did not have any marijuana and he and Stanback dropped to the ground. Mr. Washington reached into his pocket and gave Appellant his cell phone. Mr. Stanback closed his eyes and heard the sound of a gun clicking. Appellant fired a single bullet, which entered the back of Mr. Washington's head, killing him. Appellant said "did I sleep that little nigger[?]" and ran from the scene. (*Id.* at 70). Witness Veronica Vinson was walking nearby on 16th street at that time. She heard a gunshot and then observed three men run past her.

On December 10, 2010, police officers executed a search warrant on Appellant's residence. They recovered two revolvers in close proximity to ammunition from his bedroom. On February 4, 2011, police showed Ms. Vinson a photo array, and she identified Appellant as the last of the three men that ran past her on the night of the incident.

On February 25, 2013, Appellant proceeded to a jury trial. On February 28, 2013, the jury found him guilty of the above-stated offenses. On April 5, 2013, the trial court sentenced Appellant to a term of life imprisonment. Appellant filed a direct appeal, which this Court dismissed on June 26, 2013 for failure to file a docketing statement. *See* Pa.R.A.P. 3517. On August 16, 2013, Appellant filed a *pro se* petition for writ of *habeas corpus*, which the court treated as a Post-Conviction Relief Act ("PCRA")[3] petition. The court appointed counsel, who filed a supplemental petition seeking reinstatement of Appellant's direct appeal rights. On January 14, 2014, the trial court granted Appellant's petition and reinstated his right to file a direct appeal *nunc pro tunc*. This timely appeal followed.[4]

On June 20, 2014, counsel for Appellant filed an *Anders* brief and a petition to withdraw as counsel. On July 11, 2014, because counsel's petition did not fully comply with the technical requirements of *Anders*, this Court issued a *per curiam* order directing him to file an amended petition. On July 22, 2014, counsel filed an amended petition to withdraw stating his

---

[3] 42 Pa.C.S.A. §§ 9541-46.

[4] In response to the trial court's concise statement order, counsel filed a statement of intent to file an *Anders/McClendon* brief in lieu of a concise statement. *See* Pa.R.A.P. 1925(c)(4). On March 24, 2014, the court filed a letter in lieu of a Rule 1925(a) opinion, stating that, in accordance with its general practice when counsel files such statement, it would refrain from producing an opinion unless directed to do so by this Court. (*See* Trial Court Letter, 3/24/14, at 1); *see also* Pa.R.A.P. 1925(a).

belief that this appeal is wholly frivolous. (**See** Amended Petition to Withdraw as Counsel, 7/22/14, at iv ¶ 15). Counsel has submitted to this Court a copy of his letter to Appellant, enclosing a copy of the **Anders** brief, informing him of the petition to withdraw, and advising him of his right to retain new counsel or proceed with the appeal *pro se*. (**See** Motion to Withdraw as Counsel, 6/20/14, at iv ¶ 14, Exhibit A). Appellant has not responded.

> [I]n the **Anders** brief that accompanies . . . counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, ***supra*** at 361.

> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel to either comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

*Commonwealth v. O'Malley*, 957 A.2d 1265, 1266 (Pa. Super. 2008) (citations omitted).

In the instant case, counsel has complied with the *Anders* and *Santiago* requirements. He has submitted a brief that summarizes the case, (*see Anders* Brief, at 9-17); referred to anything that might arguably support the appeal, (*see id.* at 18-19, 21-22); and set forth his reasoning and conclusion that the appeal is frivolous, (*see id.* at 20-22). *See Santiago*, *supra* at 361. Counsel has filed a petition to withdraw, sent Appellant a letter advising that he concluded that there are no non-frivolous issues, provided him with a copy of the *Anders* brief, and notified him of his right to retain new counsel or proceed *pro se*. Because counsel's petition and brief satisfy the requirements of *Anders* and *Santiago*, we will undertake our own review of the appeal to determine if it is wholly frivolous. *See O'Malley*, *supra* at 1266.

The *Anders* brief raises two issues for our review challenging the sufficiency of the evidence to support Appellant's second-degree murder conviction.

> A.    Whether the evidence at trial was insufficient to support Appellant's conviction for second-degree murder because the Commonwealth failed to establish that [Appellant] was the actor who shot and killed Kendrell Washington during the course of an alleged robbery?
>
> B.    Whether the evidence at trial was insufficient, as a matter of law, to support Appellant's conviction for second-degree murder because the Commonwealth failed to establish that [Appellant] intended to kill Kendrell Washington?

(**Anders** Brief, at 8).[5]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Cahill**, 95 A.3d 298, 300 (Pa. Super. 2014) (citation omitted).

In both of his issues on appeal, Appellant challenges the sufficiency of the evidence to support his second-degree murder conviction. (**See Anders** Brief, at 19-22). He first argues that the Commonwealth failed to establish that he was the individual who shot Mr. Washington because there was no credible evidence identifying him as the shooter. (**See id.** at 19). He next argues that the evidence was insufficient because the Commonwealth failed

---

[5] We will address these issues together because they are related.

to prove that he intended to kill Mr. Washington during the course of the robbery. (*See id.* at 21-22). These issues do not merit relief.

The Pennsylvania Crimes Code defines the crime of second-degree murder as follows:

> **(b) Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

18 Pa.C.S.A. § 2502(b).

The predicate felony in the instant matter is robbery, graded as a felony of the first degree. *See* 18 Pa.C.S.A. § 3701(a)(1)(i), (b)(1). The Code defines the offense of robbery, in relevant part, as follows:

> **(a) Offense defined.**—
>
> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> > (i)    inflicts serious bodily injury upon another;
>
> *       *       *
>
> (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A. § 3701(a)(1)(i), (2).

> Murder of the second degree is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.A. § 2502(b). 18 Pa.C.S.A. § 2502(d) defines perpetration of a felony as:

- 7 -

> [t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

18 Pa.C.S.A. § 2502(d).

> **The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim**.
>
> *     *     *
>
> When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact the actor was engaged in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, knew or should have known that death might result from the felony.
>
> . . . **[O]ur Supreme Court [has] explained that not only the killer, but all participants in a felony . . . are equally guilty of felony murder when a killing by a felon occurs**.
>
> The statute defining second degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1022-23 (Pa. Super. 2002), *appeal denied*, 805 A.2d 521 (Pa. 2002) (case citations omitted; emphases added); *see also Commonwealth v. Olds*, 469 A.2d 1072, 1076 (Pa. Super. 1983) ("The malice required for felony-murder is not a specific intent to kill.") (citation omitted).

Here, Paris Stanback testified that he was walking down the street with Washington when a man with a revolver in his hand demanded that they give him marijuana, and ordered them to the ground. (*See* N.T. Trial, 2/26/13, at 65-67). Mr. Stanback testified that he observed Washington give the man his cell phone, and Stanback closed his eyes and heard the sound of a gun clicking, followed by the sound of a single gunshot. (*See id.* at 68-70). He stated that he heard the man say "did I sleep that little nigger[?]" and observed him flee the scene. (*Id.* at 70; *see id.* at 71). Although Stanback acknowledged that he purposefully did not focus on the gunman's face and that he closed his eyes during most of the episode because he feared for his life, he also testified that the man did not have anything covering his head or face and that he appeared to be acting alone. (*See id.* at 66, 68-69, 78).

Veronica Vinson testified that on the night of the incident at approximately 8:40 p.m., she was walking home from a bar traveling north on 16th street. (*See id.* at 142-43). She observed three people standing one block north of her and then heard a voice shout "get the fuck down on the ground." (*Id.* at 145; *see id.* at 144, 150-51). She heard the sound of

a single gunshot, and observed three men run past her at a distance of approximately six to seven feet away. (*See id.* at 146-47, 157). She testified that she was able to see the men's faces as they ran past her and she made eye contact with all three men. (*See id*. at 148, 164). In a photo array presented to her, she identified Appellant as the third man in the group to run past her immediately after she heard the gun shot. (*See id.* at 156-57, 159, 165).

Tyrek Smith, Appellant's first cousin, testified that on the night of the incident, Appellant admitted that:

> he seen [sic] two guys that looked like they were doing a transaction to him and he wanted to go rob them and he laid both of them down and he tried I guess to shoot and the gun jammed. So he tried to hit the guy in the back of the head and the gun accidentally went off.

(N.T. Trial, 2/27/13, at 200-01). Smith further testified that Appellant directed their friend Sayid Hall not to use Washington's cell phone because he obtained it during the robbery. (*See id*. at 206, 220).

Corporal Shawn Williams testified that police recovered two revolvers in close proximity to ammunition from Appellant's bedroom during the search of his residence. (*See id*. at 240-41, 243-44). Ballistics analysis showed that one of the revolvers was compatible with the bullet that killed Mr. Washington. (*See id*. at 250-52, 255).

Maurice Jackson was the sole defense witness at trial and he stated that he had shared a prison cell with Appellant's friend, Sayid Hall. (*See*

N.T. Trial, 2/28/13, at 323).  Jackson testified that Hall admitted to shooting Mr. Washington in the back of the head.  (**See id.** at 324).

Based on the foregoing, and viewing the evidence in the light most favorable to the Commonwealth, **see Cahill, supra** at 300, we conclude that Appellant's challenges to the sufficiency of the evidence lack merit.  The record fully supports the jury's finding that Appellant was involved in the armed robbery of Stanback and Washington when Washington's killing occurred.  Appellant's assertion that he was not the individual who actually shot Mr. Washington is immaterial given the overwhelming evidence that he was actively engaged in robbing Stanback and Washington, resulting in Washington's death.  **See Lambert**, **supra** at 1022-23; **see also** 18 Pa.C.S.A. § 2502(b) (permitting conviction where individual acted as principal or accomplice in felony).  Likewise, Appellant's argument with respect to his lack of intent to kill Washington is meritless; as stated above, the intent to commit the underlying robbery is imputed to the killing to make it second-degree murder, regardless of whether Appellant actually intended to physically harm Washington.  **See Lambert**, **supra** at 1022-23.  Accordingly, Appellant's challenges to the sufficiency of the evidence do not merit relief.  Furthermore, after independent review of the record, we determine that there are no other non-frivolous bases for appeal, and this appeal is "wholly frivolous."  **O'Malley, supra** at 1266.

Judgment of sentence affirmed.  Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/14/2015</u>