J-S07036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JACQUEZ DAVON BROWN | |
| Appellant | No. 832 MDA 2014 |

Appeal from the Judgment of Sentence January 27, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007081-2011

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 24, 2015**

Jacquez Davon Brown appeals from the judgment of sentence imposed on January 27, 2014, in the Court of Common Pleas of York County, following his conviction by a jury of first-degree murder.[1]  Because Brown was a minor at the time of the crime, he was not subject to the mandatory life sentence imposed upon adults.[2]  He received a sentence of 50 years to life imprisonment.  In this timely appeal, Brown claims the verdict was insufficient as a matter of law, in that the Commonwealth failed to disprove his claim of self-defense beyond a reasonable doubt.  He also argues the trial court abused its discretion in imposing a minimum sentence fifteen

_____

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 1102.1.

years greater than the 35-year statutory mandatory minimum. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The factual and procedural histories of this matter are well known to the parties. Therefore, we simply incorporate the trial court's able recitation, found at pages 2-9 of the August 26, 2014, Pa.R.A.P. 1925(a) opinion. However, we note the following salient facts.

Two eyewitnesses to the crime testified they saw a fight between Brown and the victim. The victim apparently believed Brown had taken his cell phone. At one point during the fight, the victim had Brown on the ground in a headlock. However, both eyewitnesses testified the first shot fired by Brown at the victim occurred as the victim knelt and Brown stood nearby. Brown fired several other shots as he walked away from the fallen victim.

The victim was struck three times and the medical examiner could not determine the order the wounds were suffered. The fatal wound entered the victim's lower back, fractured the 10th thoracic vertebra, lacerated his aorta and esophagus, and transected the carotid artery before exiting his neck. This shot was fired from a distance of between one and three feet from the victim. The other two wounds were non-fatal; one went through the victim's hand before lodging in his arm, the other went into the victim's buttocks. Another bullet struck a nearby car. Brown was apprehended shortly after the attack as he left the roof of a house that was several blocks away from

the crime scene. The victim's cell phone was found on the roof. The gun was found approximately two months later, under a desk in an apartment of the building at which Brown was apprehended. The gun was a 9 mm, Sturm and Ruger, semi-automatic handgun with a laser sight attached. Brown gave a statement to the police, admitting having shot the victim, but claiming he did so in self-defense, as he attempted to escape the headlock. The certified record demonstrates the victim was approximately four years older than Brown, and was taller and approximately 50 pounds heavier than Brown. Brown was approximately four months from his 16th birthday at the time of the crime.

Our scope and standard of review to a challenge to the sufficiency of the evidence is well settled:

> "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Murray**, 83 A.3d 137, 151 (Pa. 2013). We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt. **Commonwealth v. Cahill**, 95 A.3d 298, 300 (Pa. Super. 2014).

> > In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* (citation omitted).

***Commonwealth v. Tejada***, 107 A.3d 788, 792-93 (Pa. Super. 2015).

Here, Brown argues the Commonwealth failed to disprove beyond a reasonable doubt his claim of self-defense. The application of self-defense is governed by 18 Pa.C.S. § 505,[3] which states, in relevant part:

[t]he use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily injury.

18 Pa.C.S. § 505(b)(2).

Additionally, the use of deadly force is not justifiable if:

The actor knows that he can avoid the necessity of using such force with complete safety by retreating.

18 Pa.C.S. § 505(b)(2)(ii).

The evidence, viewed in the light most favorable to the Commonwealth, as verdict winner, shows that Brown was not in a headlock at the time he fired any shot at the victim. Two independent eyewitnesses

_____

[3] On August 29, 2011, shortly after this crime took place, the current version of the self-defense statute became effective. We have quoted the law applicable at the time of the crime.

testified that Brown was essentially standing over the kneeling victim when the first shot was fired and subsequent shots were fired as the victim lay on the ground. Therefore, Brown was no longer under the threat of death or serious bodily injury when he fired the gun. As Brown was standing at the time and his victim was kneeling, he could have retreated safely, rather than pulling the trigger. Therefore, Brown was not entitled to an acquittal based upon his claim of self-defense. Accordingly, this claim for relief must fail.

Next, Brown challenges the discretionary aspect of his sentence, arguing the trial court abused its discretion in imposing a 50-year minimum term of incarceration. Specifically, Brown claims, "the trial court abused its discretion in sentencing him to a half-century of imprisonment, without proper consideration of several mitigating factors in support of a lower sentence." Appellant's Brief, at 17. This statement mirrors Brown's claim in his required Pa.R.A.P. 2119(f) statement. Specifically, Brown claims the trial court failed to consider his statement of remorse, his limited criminal history with successful completion of a prior probationary sentence, and the fact his actions, in both the simple assault and the instant murder, were in response to action taken by the victims.

> Regarding a challenge to the discretionary aspects of a sentence:
>
> This Court does not review such issues as a matter of right. "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247,

1265 (Pa. Super. 2104). The appellant must satisfy all of the following:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

**Commonwealth v. Baker**, 72 A.3d 652, 662 (Pa. Super. 2013).

**Tejada**, **supra**, 107 A.3d at 797-98.

Furthermore, with respect to the claim of failure to consider mitigating circumstances,

> "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)(citation omitted). Accordingly, we conclude Appellant's argument that the trial court failed to give adequate weight to mitigating factors does not present a substantial question appropriate for our review. **See Id**.; *see also* **Commonwealth v. Kraft**, 737 A.2d 755, 757 (Pa. Super. 1999), *appeal denied*, 560 Pa. 742, 747 A.2d 366 (1999)(determining appellant's claim that sentence of incarceration for DUS violation was excessive because sentencing court failed to adequately consider certain mitigating factors did not raise substantial question).

**Commonwealth v. Disalvo**, 70 A.3d 900, 903 (Pa. Super. 2013).[4]

---

[4] We are cognizant of a recent opinon, **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014), that stated the failure to consider mitigating circumstances does present a substantial question. **Raven** cited **Commonwealth v. Felmlee**, 828 A.2d 1105 (Pa. Super. 2005) for that proposition. **Felmlee** addressed an aggravated range imposed sentence
*(Footnote Continued Next Page)*

However, recognizing that we are reviewing a sentence imposed pursuant to 18 Pa.C.S. § 1102.1, sentencing of a minor for murder, we will address Brown's argument.

In response to **Miller v. Alabama**, 132 S.Ct. 2455 (2012),[5] the Commonwealth of Pennsylvania has enacted special sentencing provisions applying to persons under the age of 18 who committed first-degree murder. In relevant part, the statute provides:

> **§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer**
>
> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
>> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S. § 1102.1(a)(1) (emphasis in original).

_(Footnote Continued)_ —————————

without consideration of mitigating circumstances, which did not occur here. We do not believe **Felmlee** stands for the general proposition that failure to consider mitigating circumstances presents a substantial question.

[5] In 2012, in **Miller**, the United States Supreme Court determined that mandatory life imprisonment for juveniles convicted of murder offended the 8th Amendment prohibition against cruel and unusual punishment.

Because Brown was 15 years-old at the time of the commission of the crime, he was subject to a 35-year mandatory minimum term of incarceration. Prior to sentencing, a pre-sentence investigation was generated by the York County Probation Department. This report detailed Brown's prior juvenile record as well as various social, educational and financial factors, including those issues Brown has raised herein. The report also included victim impact statements from five members of the victim's family. The report noted Brown had successfully completed a prior probationary period for a simple assault (shooting a person in the face with a BB gun), but had been written up several times for various infractions, including fighting and causing a disturbance, during his pre-trial incarceration.[6] Ultimately, the report recommended the court impose a sentence of 50 years to life incarceration.

In issuing Brown's sentence, the trial court stated it reviewed the pre-sentence investigation, specifically noting the above mentioned prior assault adjudication at the age of 13, as well as the assaultive behavior during his

_____

[6] In his Appellant's Brief, Brown refers to information regarding his criminal history that was developed in the decertification hearing. This hearing was not held before the sentencing judge. It is unclear from the certified record if the sentencing judge was aware of the testimony from the decertification hearing or considered any of the psychological reports from that hearing. We have reviewed the entire record and note that the decertification hearing also contained significant information that might be considered detrimental to Brown's current argument. Because it is unclear if the trial court considered any of this information, we will not consider any of it in our analysis.

pre-trial detention. We note that "because the trial court had the benefit of a presentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." *Commonwealth v. Seagraves*, 103 A.3d 839, 847 (Pa. Super. 2014).

The trial court also heard and considered both the written victim impacts statements and testimony of relatives of the victim presented at the sentencing hearing. The trial court stated:

> Let me simply say this, when the Court has some discretion as to what to impose as far as a sentence after a life is lost, there's a tendency by those who have lost that life to believe that no sentence that we impose is sufficient to compensate for that life. We think that's a simplistic – too simplistic a way to approach the Court's duty. To equate a person's life with a certain number of years tends to diminish the value of that life, and accordingly, obviously there's no sentence that we could impose that would satisfy those who have lost the memory and experiences of the victim in this particular case.
>
> That having been said, our focus really has to turn to the Defendant in this particular matter, and as we previously indicated, it is clear to us that the Defendant has to be segregated from society for a significant period of time. Obviously attempts at rehabilitation under the juvenile system failed. The Defendant obviously quickly escalated his criminal behavior by committing this offense two years after he was placed on formal probation for the simple assault. Accordingly, our sentencing objective has to change from one of rehabilitation to simply incapacitation for a substantial period of time. We would note that a lesser sentence would depreciate the seriousness of the crime of which the defendant stands convicted.

N.T. Sentencing, 1/27/2014, at 10-11.

Contrary to Brown's assertion, the record supports the trial court's belief regarding the failure of the juvenile system to rehabilitate Brown. The commission of a first-degree murder so quickly after his first criminal episode does not bespeak a successful rehabilitative process. While Brown asserted both the simple assault and the murder were the product of self-defense, the adjudication and conviction, especially regarding the instant crime, indicate otherwise. The trial court demonstrably considered the elements presented and did not improperly ignore mitigating factors in imposing a sentence greater than the statutory mandatory minimum. Accordingly, Brown is not entitled to relief on this issue.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/2015