**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES CARLTON WOODHAM | : | |
| | : | |
| Appellant | : | No. 378 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000633-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES CARLTON WOODHAM | : | |
| | : | |
| Appellant | : | No. 379 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000634-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES CARLTON WOODHAM | : | |
| | : | |
| Appellant | : | No. 380 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000636-2019

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 04, 2021**

James Carlton Woodham appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Bradford County, following his convictions for one count each of theft by deception[2] and criminal attempt—retail theft,[3] and two counts of criminal conspiracy to commit retail theft.[4] Upon review, we affirm in part, vacate in part, and remand for resentencing consistent with this memorandum.

The Commonwealth charged Woodham with various theft offenses in three separate criminal informations filed on October 19, 2018, May 16, 2019, and June 15, 2019.[5]  The cases were consolidated for jury trial.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By filing three separate notices of appeal with one docket number on each notice, Woodham has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases."  **See** Pa.R.A.P. 341(a).  **See also Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (en banc) (revisiting **Walker** holding) and **Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (en banc) (same).  We have consolidated Woodham's appeals *sua sponte* pursuant to Pa.R.A.P. 513.

[2] 18 Pa.C.S.A. § 3922.

[3] 18 Pa.C.S.A. § 901; **see also** 18 Pa.C.S.A. § 3922.

[4] 18 Pa.C.S.A. § 903; **see also** 18 Pa.C.S.A. § 3922.

[5] Woodham was charged:  (1) at criminal docket number 633-2019, with retail theft and conspiracy to commit retail theft for conduct occurring in May of

- 2 -

[At Woodham's jury trial on November 15, 2019,] Tonya Steele, an Asset Protection Specialist employed by Walmart[ in] Sayre, Pennsylvania[;] David Horton, an employee of [the same] Walmart[;] . . . and alleged co-conspirator, Jessica Parker,[6] were called by the Commonwealth to testify. Photographs from the Walmart surveillance videos showing [Woodham] and [Parker] together were admitted. [Woodham] testified on his own behalf. [The evidence adduced at trial established the following:]

[In October of 2018, Woodham] and [] Parker arrive[d] at the Walmart in Sayre, PA in a red car. While moving throughout the store, Parker place[d] items into the shopping cart. She also maneuver[ed] the items often and use[d] a comforter to cover up smaller items. They approach[ed] the checkout counters. Both walk[ed] back and forth for approximately 20 minutes[,] paying attention to the doorways to see if an associate [wa]s present. While [Woodham] purchase[d] some snacks and check[ed] out at the self-checkout, Parker continue[d] walking back and forth[,] looking over the checkout aisles. Eventually[,] she pushe[d] the cart through an unattended aisle. As Parker [wa]s exiting the store, [Steele] . . . approache[d] her and ask[ed] for a receipt. [Parker] state[d] she d[id] not have one and exit[ed] the store, leaving the cart and merchandise behind. [Woodham] was waiting for her and told [] Steele [] he ["]didn't do anything." [Woodham] exit[ed] the store right behind Parker. [Woodham] and Parker le[ft] in the same red car they arrived in. The value of the merchandise found in the cart was a little over $800. [Woodham] claims that he only had an inkling that Parker was attempting to commit theft, but Parker said she told [Woodham] what she was doing and that he was to be the "lookout."

[In May of 2019, Woodham] and Parker arrive[d] at the Walmart in Sayre, PA [again, this time] in a blue/gr[a]y van. Upon entering the store, [Parker] [wa]s wearing a black wig. While moving

_____

2019; (2) at criminal docket number 634-2019, with retail theft, receiving stolen property, and theft by deception for conduct occurring in June of 2019; and (3) and at criminal docket number 636-2019, with retail theft, receiving stolen property, criminal conspiracy to commit retail theft, and criminal attempt—retail theft for conduct occurring in October of 2018.

[6] Prior to trial, alleged co-conspirator Jessica Parker pled guilty to two counts of retail theft and one count of theft by unlawful taking; she agreed to testify on behalf of the Commonwealth. *See* N.T. Jury Trial, 11/15/19, at 75-76.

throughout the store, Parker [wa]s the only one who place[d] items into the shopping cart. Parker told [Woodham] what she was doing. [Woodham] wait[ed] in the vestibule while Parker attempt[ed] to leave the store with the merchandise. As Parker [wa]s exiting the store, [] Horton confront[ed] Parker about a receipt. Parker, no longer wearing the wig, produce[d] a Lowe's receipt and then claim[ed] that her boyfriend may have the correct receipt. Parker then exit[ed] the store, leaving the cart and merchandise behind. The value of the merchandise found in the cart was over $300. [Woodham] claims that he waited in the vestibule because Parker had his keys. Parker claims that she never had [Woodham]'s keys.

[In June of 2019, Woodham], while entering the Walmart in Sayre, PA, f[ound] on the ground a receipt for motor oil purchased at a Walmart in Painted Post, NY. The receipt show[ed] cash payment and [did] not give the name of the purchaser. [Woodham] enter[ed] the subject store empty handed. [Woodham] t[ook] possession of a jar of motor oil from a shelf in the store matching th[e] descri[ption] on the receipt from [the] Painted Post [Walmart]. [Woodham] complete[d] a cash return for the motor oil using the receipt from Painted Post. [Woodham] claims that he purchased the motor oil in Painted Post using his cash card. [Woodham] also claims that there was over $5,000 on his cash card coming from [social security income] back payments. Parker claims that she did not enter the store that day but that she and [Woodham] drove to Walmart in [Woodham]'s brother's red car. She claims that she waited in the car because she did not feel well. There are no photos showing Parker in the store on that day.

Trial Court Opinion, 6/16/20, at 1-3 (reordered chronologically; internal headings omitted). Following trial, the jury found Woodham guilty of the above-stated offenses.[7]

On January 13, 2020, following the preparation of a presentence investigation report (PSI), *see* N.T. Sentencing, 1/13/20, at 1-2, the trial

_____

[7] The jury acquitted Woodham of retail theft under all three docket numbers, and, further, acquitted Woodham of both receiving stolen property and retail theft under docket numbers 634-2019 and 636-2019.

- 4 -

court sentenced Woodham as follows: at docket number 633-2019, for conspiracy to commit retail theft, 12 to 36 months' imprisonment, plus costs and a $500 fine; at docket number 634-2019, for theft by deception, 6 to 12 months' imprisonment, plus costs and a $250 fine; at docket number 636-2019, for criminal conspiracy to commit retail theft, 12 to 36 months' imprisonment, plus costs and a $500 fine, and for criminal attempt to commit retail theft, 12 to 24 months' imprisonment, plus costs and a $500 fine. The trial court ordered Woodham's sentences to run consecutively to each other, expressing its intention that Woodham's aggregate sentence range from 42 to 108 months' imprisonment. *See* Sentencing Orders, 1/13/20. Woodham received credit for 194 days of time served.

On January 15, 2020, Woodham filed a motion for appointment of new counsel. On January 23, 2020, Woodham's then-counsel, Richard Jennings, Esquire, filed a post-sentence motion on Woodham's behalf. On February 4, 2020, the court issued an order withdrawing Attorney Jennings as counsel, and appointing Daniel Stefanides, Esquire, to represent Woodham on appeal. *See* Order, 2/4/20.[8] Attorney Stefanides filed a timely notice of appeal on Woodham's behalf; both Woodham and the trial court have complied with Pa.R.A.P. 1925. Instantly, Woodham raises the following issues for our review:

---

[8] On February 7, 2020, the trial court issued an order denying as moot Woodham's motion to appoint counsel, having already appointed Attorney Stefanides to represent him. *See* Order, 2/7/20.

1. Whether the [trial] court imposed an illegal sentence [upon] [Woodham] by sentencing him on two separate inchoate crimes that were part of a single criminal episode.

2. Whether the [trial] court abused its discretion by imposing consecutive sentences on each of the three cases, which were consolidated for trial.

3. Whether the evidence presented at trial was not sufficient to sustain the convictions.

4. Whether the convictions were against the weight of the evidence.

Brief of Appellant, at 4.

Woodham first argues that, under criminal docket number 636-2019,[9] the sentencing court illegally imposed consecutive sentences of 12-24 months' imprisonment and 12-36 months' imprisonment for his convictions of criminal attempt—retail theft and criminal conspiracy to commit retail theft, respectively, stemming from the incident on October 18, 2018. It is well-settled that, when considering claims that implicate the legality of one's sentence, this Court's standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. King***, 234 A.3d 549, 555 (Pa. 2020).

Pursuant to section 906 of the Crimes Code, "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal

---

[9] In Woodham's appellate brief, counsel erroneously states that Woodham was convicted of both criminal conspiracy and criminal attempt under docket number 633-2019 for the incident that occurred in October of 2018. ***See*** Brief of Appellant, at 14. Woodham was convicted of these two offenses under criminal docket number 636-2019. At docket number 633-2019, Woodham was convicted only of criminal conspiracy. ***See*** Sentencing Orders, 1/13/20.

solicitation[,] or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S.A. § 906.

Instantly, Woodham, the Commonwealth, and the trial court agree—as does this Court—that Woodham's convictions under docket number 636-2019 for criminal attempt and criminal conspiracy—stemming from the same conduct designed to culminate in retail theft on October 18, 2018—violate section 906 of the Crimes Code, and that, accordingly, this matter should be remanded for resentencing. **See** Trial Court Opinion, 6/16/20, at 9-10; Brief of Appellant, at 14-15; Brief of Appellee, at 3-5. Therefore, we hereby vacate Woodham's conviction of criminal attempt—retail theft under docket number 636-2019. **See Commonwealth v. Riquelmy**, 449 A.2d 750, 750-51 (Pa. Super. 1982) (vacating sentence imposed on charge of attempted theft and affirming sentence imposed on charge of criminal conspiracy to commit theft by deception where defendant was sentenced at both counts in violation of section 906).[10]

Because the trial court sentenced Woodham to consecutive sentences for both inchoate crimes, vacating Woodham's criminal attempt conviction will upset the court's overall sentencing scheme. Therefore, this case must be

---

[10] Although this Court in **Riquelmy**, **supra**, vacated the appellant's judgment of sentence on the charge of attempted theft and affirmed his judgment of sentence on the charge of criminal conspiracy, **see id.** at 750-51, section 906 provides that a person "may not be *convicted*" of more than one inchoate crime for conduct designed to commit the same crime. 18 Pa.C.S.A. § 906 (emphasis added). Accordingly, we vacate Woodham's criminal attempt conviction itself, rather than the judgment of sentence therefor.

remanded so that the trial court can restructure its sentence. **See Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) ("If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan."); **cf. Brown**, **supra** at n.6 (because trial court imposed *concurrent* sentences for two inchoate crimes in violation of section 906, remand for resentencing not necessary as it would not result in change in sentence) (emphasis added).

Next, Woodham argues that the trial court abused its discretion by failing to consider his role in the crimes charged and by imposing consecutive sentences for each conviction. No relief is due.

Woodham's claims raise a challenge to the discretionary aspects of his sentence. **Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa. Super. 2005) (challenge to imposition of consecutive sentences is challenge to discretionary aspects of sentence). An appeal raising the discretionary aspects of sentencing is not guaranteed of right; rather, it is considered a petition for permission to appeal. **Commonwealth v. Williams**, 562 A.2d 1385, 1368-87 (Pa. Super. 1989) (en banc). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f);

and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***Id.***

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Griffin***, 65 A.3d 932, 935-36 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Here, Woodham filed a post-sentence motion for reconsideration of sentence, followed by a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Rule 2119(f). ***See*** Brief of Appellant, at 16. Accordingly, we must now determine whether Woodham has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

We determine whether the appellant has raised a substantial question on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018) (brackets omitted).

In his Rule 2119(f) statement, Woodham asserts that: "the lower court did not take into consideration his minor role in the crimes charged[, and t]he

sentences should not have run consecutively to each other." Brief of Appellant, at 16. Woodham has failed to present a substantial question for our review. His bald assertion that the sentencing court failed to consider his "minor role" in the crimes charged falls short of the "colorable argument" required to justify review of the discretionary aspects of his sentence— namely, that the sentencing judge's actions were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Griffin*, *supra* at 935-36; *see also Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (where, as here, court has benefit of a presentence investigation report, we assume court was aware of and properly weighed all relevant information along with mitigating and statutory factors). Furthermore, we have previously held that a trial court's exercise of discretion in imposing consecutive sentences, without more, does not raise a substantial question for our review. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) (bald claim of excessiveness due to consecutive nature of sentence will not raise substantial question; imposition of consecutive sentences may raise substantial question "only in the most extreme circumstances."). Therefore, we cannot address Woodham's claims regarding the discretionary aspects of his sentence. *Williams*, *supra* at 1368-87.

Next, Woodham challenges the sufficiency of the evidence for his convictions of criminal conspiracy to commit retail theft and criminal attempt—

retail theft under docket number 636-2019.[11]  *See* Brief of Appellant, at 19-23.  Because we vacate Woodham's conviction for criminal attempt under that docket number as violative of section 906 of the Crimes Code, *see supra* at 6-8, we shall proceed with our review of his challenge to the sufficiency of the evidence for his criminal conspiracy conviction only.

Whether sufficient evidence exists to support a verdict is a question of law for which our standard of review is *de novo* and our scope of review is plenary.  *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. 2015).  We review the evidence in the light most favorable to the Commonwealth as verdict winner to determine whether there is sufficient evidence to allow the trier of fact to find every element of a crime beyond a reasonable doubt.  *Id.*

> In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the

---

[11] Although Woodham states that his "convictions" for criminal conspiracy should be vacated on sufficiency grounds, *see* Brief of Appellant, at 20, he discusses only his conspiracy conviction at docket number 636-2019 in his appellate brief.  *See id.* at 19-23.  Therefore, his challenge to the sufficiency of the evidence for his conspiracy conviction at docket number 633-2019 is waived.  *See Commonwealth v. Spotz*, 18 A.3d 244, 323 (Pa. 2011) (issues and sub-issues that are undeveloped are unreviewable on appeal and are accordingly waived).

[fact-finder,] while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014).

Pursuant to section 18 Pa.C.S.A. § 3929, a person is guilty of retail theft if he:

takes possession of, carries away, transfers[,] or causes to be carried away or transferred, any merchandise displayed, held, stored[,] or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use[,] or benefit of such merchandise without paying the full retail value thereof.

*Id.* A person is guilty of criminal conspiracy where, with the intent of promoting or facilitating the commission of a crime, he:

(1) agrees with [an]other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. To establish criminal conspiracy, the Commonwealth must also prove beyond a reasonable doubt that the defendant or a co-conspirator took an overt act in furtherance of the conspiracy. 18 Pa.C.S.A. § 903(e). *See also Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013) (overt act in furtherance of conspiracy required for conviction). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an [agreement] may be proved inferentially by

circumstantial evidence, i.e., the relations, conduct[,] or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.*

At Woodham's trial, Asset Protection Specialist Tonya Steele testified that on October 18, 2019, she first noticed Woodham and Parker together in the "home-line" section of the Walmart in Sayre, Pennsylvania. N.T. Jury Trial, 11/15/19, at 19-20. After noticing Parker covering smaller items with a large comforter, Steele followed the two around the store as they walked back and forth together for twenty to thirty minutes, paying attention to who was near the exit. *Id.* at 20-22. Once Woodham purchased a single item in the self-checkout line, Parker attempted to exit the store without paying for the merchandise in her cart, but Steele was able to stop her. *Id.* at 22. Woodham was "a couple steps right behind her." *Id.* at 22. He proceeded to tell [Steele] that "he didn't do anything." *Id.* at 22.

Parker testified that she and Woodham arrived at the Walmart together on October 18, 2018 in Woodham's brother's car. *Id.* at 66-67. She testified that neither she nor Woodham had any money on them when they arrived, and that they intended to "exchange [what they stole] for drugs." *Id.* at 70. Parker testified that Woodham knew about her plans to steal merchandise to exchange for drugs because she told him. *Id.* at 70-71. She explained that Woodham wanted some of the money or the drugs, and agreed to enter the store before her and "mak[e] sure nobody was around," which he did. *Id.* at 71. After Steele stopped Parker from leaving with unpaid-for merchandise, Parker and Woodham left in the same car together. *Id.* at 72. Woodham

testified that he did not know "100%" what Parker was doing, but he "had an idea." *Id.* at 80. When asked why he was shopping with her that day, he testified, "I have no idea." *Id.* at 91.

It is well-settled that mere conflicts in testimony do not render evidence insufficient; when conflicts and discrepancies in testimony arise, it is within the province of the jury to determine the weight to be given to each witness' testimony. *Commonwealth v. Verdekal*, 506 A.2d 415, 419 (Pa. Super. 1986). The jury, therefore, was free to credit Parker's testimony over Woodham's. We do not find that the evidence supporting a criminal conspiracy between Parker and Woodham on October 18, 2018, is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. *Cahill*, *supra* at 300. The foregoing evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove beyond a reasonable doubt that, on October 18, 2018, Woodham and Parker had agreed to steal retail merchandise, or that Woodham agreed to aid Parker in her attempt or commission of retail theft, and that an overt act was taken in furtherance of the conspiracy.

Lastly, Woodham challenges the weight of the evidence for his convictions under docket numbers 633-2019 and 636-2019 because Parker's testimony was so "incredulous, self-serving[,] and contrary to all other evidence presented at trial." Brief of Appellant, at 24.

Our standard of review for a challenge to the weight of the evidence is well-settled:

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question [of] whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Cousar***, 928 A.2d 1025, 1035-36 (Pa. 2007).

Moreover, when a weight challenge "is predicated on the credibility of trial testimony, [appellate] review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa. Super. 2012). Any conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve. ***Commonwealth v. Sanders***, 42 A.3d 325, 331 (Pa. Super. 2012). Finally, we note that, "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [whether] the verdict is against the weight of the evidence." ***Id.***

In denying Woodham's motion for a new trial on the grounds that the verdicts were against the weight of the evidence,[12] the trial court reasoned as follows:

> Here, there was both circumstantial and direct evidence of [Woodham]'s participation in the crimes of . . . attempt and conspiracy[,] as well as theft by deception. The Commonwealth presented evidence in the form of the testimony of Steele, Horton[,] and Parker [as well as] photos from the surveillance footage. . . . [Woodham] testified as well. The jury could and obviously did draw inferences from the activities of [Woodham] and Parker while in the store as described by Steele. Parker's testimony that [Woodham] was aware of the attempted thefts and was [the] "look out" affirms the inferences. Parker's and Steele's testimony that [Woodham] found a receipt from another store and used it to obtain a refund obviously conflicts with [Woodham]'s testimony that he had purchased the oil can. The jury [] found the Walmart employees' and Parker's testimony more credible than [Woodham's] and concluded that [Woodham] conspired with Parker to steal from the store, attempted to steal from the store, did steal from the store[,] and committed a theft by deception.

Trial Court Opinion, 6/16/20, at 7-8.

There is nothing in the record to suggest that the trial court's decision to deny Woodham's motion for a new trial based on the weight of the evidence was a palpable abuse of discretion. **See Cousar**, **supra**. The Commonwealth called numerous witnesses who all corroborated the same theory—that Woodham committed theft and conspired with Parker to commit retail theft on several occasions. "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess

---

[12] Woodham preserved this challenge by raising it in a post-sentence motion, as required by Pa.R.Crim.P. 607.

the credibility of the witnesses." ***Commonwealth v. Palo***, 24 A.3d 1050, 1055 (Pa. Super. 2011); ***see also see also Commonwealth v. Brown***, 648 A.2d 1177, 1190 (Pa. 1994) (appellate court, whose review rests solely upon cold record, stands on different plane than trial court, which is aided by on-the-scene evaluation of evidence; thus, appellate court not empowered to substitute its opinion regarding weight of evidence for that of trial judge). Accordingly, this claim fails.

Criminal attempt—retail theft conviction under docket number 636-2019 vacated. All remaining convictions affirmed. Remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/04/2021