J-S26008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAYLOR MCCOY WIKE JR. | : | |
| | : | |
| Appellant | : | No. 1620 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 2, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004668-2020

BEFORE: LAZARUS, P.J., OLSON, J., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: NOVEMBER 4, 2025**

Taylor McCoy Wike, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Lancaster County, following his convictions of one count each of driving under the influence of alcohol or controlled substance (DUI) — general impairment[1] and restrictions on alcoholic beverages.[2] Wike argues that the trial court improperly denied his request for a continuance, which prohibited him from representing himself pro se. He also challenges his convictions, claiming the evidence was insufficient to prove that he was operating, driving, or in actual physical control of his motor vehicle. After careful review, we affirm.

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] *Id.* at § 3809(a).

The trial court summarized the facts of the case as follows:

On August 19, 2020, Lancaster City Bureau of Police responded to a call from a passerby who stated that there was an unconscious person parked in a green minivan at the intersection of West Vine and South Arch Streets in Lancaster City. Once on the scene, police found that the keys were in the ignition [of the minivan], the engine was running, and very loud music was playing. Officer [Caitlyn] Stallings was first on the scene and attempted to wake the occupant of the vehicle, later identified as [Wike], for an entire minute before he was responsive. Even then, [Wike] was "very disoriented with very sluggish movements and clumsy with his hands[,]" so Officer Stallings opened the vehicle's door. At that point, she noticed that the vehicle was in park, but when she directed [Wike] to turn it off, "he started reaching for the gear shifter and actually at one point put his foot on the gas pedal which caused the engine to rev because it was in park." Additional officers arrived on the scene[,] and [Wike] was ordered out of the vehicle; he did not comply and was removed by law enforcement. At that time, law enforcement believed [Wike] to be intoxicated due to the aforementioned disorientation and sluggishness, in addition to the smell of alcoholic beverage emanating from [Wike]'s breath, which could be smelled by officers through Covid[-]19 face masks, and the presence of opened containers of alcoholic beverage in the front cab area of the vehicle. Officers also observed [Wike] had glassy, bloodshot eyes, stammered when he spoke, he replied with slow, repetitive speech, and was non-compliant. [Wike] refused to identify himself, refused [s]tandardized [f]ield [s]obriety [t]ests, refused a breath test[,] and [Wike] later produced an invalid Pennsylvania driver's license.

Trial Court Opinion, 1/17/25, at 1-3 (internal citations omitted).

At the start of trial, Wike inquired, for the first time to the trial court, about a new attorney and his ability to represent himself:

THE COURT: Good morning. Have a seat. We're here for this bench trial, Commonwealth v. Taylor Wike, Jr., 4668 of 2020. [] Call your first witness.

[THE COMMONWEALTH]:  Thank you, Your Honor.  I'm not sure if there was a *Grazier*[3] matter that we needed to address beforehand?

THE COURT:  Well, we're not changing attorneys at this point.  What is the issue?

[WIKE]:  I just think that there's a lot of evidence that — that hasn't been gone over, and — and whenever I suggest that to him he kind of writes off any — you know, anything I have to say about it.  Like, cause the only — **the sticking point for me, Your Honor, is they only presented us with one officer body cam, and that is the body cam of the last officer to show up that had seen nothing**.  So the other three officers that showed up before him, we don't have any body cam for them.  And there's only two officers, those are the two that initially — that showed up first.  Their car cams were on but neither one of their body cams.

THE COURT:  Has all the discovery been produced?

[THE COMMONWEALTH]:  Yes, Your Honor.  Everything that the Commonwealth has has been provided to defense counsel.  The reason for the one missing body cam is that **Officer Stalling's body cam was not functional when she arrived on the scene.  So I don't have that either because it doesn't exist.**

[WIKE]:  Well, in the video —

THE COURT:  Have you gone over the discovery with your client?

[DEFENSE COUNSEL]:  Yes, Judge.  I gave him copies of it, and I also went over it with him.

THE COURT:  The next issue?

[WIKE]:  That's the biggest one, Your Honor.  I mean, I just — that's pretty much it.  **If — and if I were granted a — a new attorney, would — or to represent myself —**

_____

[3] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) (requiring a hearing on the record to determine if a defendant's waiver of counsel is knowing, intelligent, and voluntary).

THE COURT: We're not going to give you a new attorney.

[WIKE]: **Well, if I were to repre — if you would grant me the right to represent myself, would you then allow me [] a short continuance?**

THE COURT:  No.

[WIKE]:  Okay.  Well, then there's really no issue for the — the grand jury (sic) hearing then, Your Honor.

THE COURT:  This has been scheduled.  This was scheduled — when was this scheduled for a bench trial?

[THE COMMONWEALTH]:  I'm not sure when we initially scheduled it, Your Honor, but I will note this is a 2020 case.

THE COURT:  This case is —

[WIKE]:  I've only —

THE COURT:  — four years old.

[WIKE]:  I've only spoke[n] to my attorney a handful of times, Your Honor.  And I never, with the exception of one time, said that — you know, to ask for a continuance, and that was because he had just told me he had just got the — the discovery and we hadn't even had a chance to go over it, or I hadn't.

[THE COMMONWEALTH]:  Your Honor, if I may note for the record, [Wike] at one point was out on a bench warrant on which he was picked up.  As soon as I was assigned the case I provided discovery to Attorney Lindsey right away.  I will also note that, just for the record, if [Wike] were to plead to this, he would have time served based on what he served on the bench warrant.  So I just wanted to note that.

THE COURT:  Well, the charges are DUI, restriction on alcoholic beverage, that would be open containers, and then drivers required to be licensed, correct?

[THE COMMONWEALTH]:  Yes, Your Honor.

- 4 -

THE COURT: And this is the first DUI?

[THE COMMONWEALTH]: For sentencing purposes, yes.

[DEFENSE COUNSEL]: Yes, Judge.

THE COURT: And is this a Tier III or what tier is this?

[THE COMMONWEALTH]: It's a Tier III, Your Honor. It was a refusal.

THE COURT: I don't know anything more about the case than that. We're ready to proceed. This is the time and place that it was scheduled. **This should have been at least brought up before, ahead of time, and we would have dealt with it. But at this point it's – it's too late. Discovery's been completed.** Discovery's been exchanged. [Wike's] — answers about where body cams are or were not produced has been answered. We're not going to give him another attorney. **If he wishes to represent himself, he'll have to do it now because this has been scheduled for a while. This case is four years old. We are ready to proceed.** [] Call your first witness.

[THE COMMONWEALTH]: Thank you, Your Honor. The Commonwealth would call Officer Stallings to the stand.

THE COURT: Do you wish to have a few minutes to talk to your attorney —

[DEFENSE COUNSEL]: We've spoken beforehand.

THE COURT: — about this plea offer or this plea negotiation before we proceed?

[DEFENSE COUNSEL]: I'll take, like, two minutes, Judge.

THE COURT: All right. We'll give you two minutes.

(A discussion was held off the record.)

[DEFENSE COUNSEL]: We'll proceed.

N.T. Bench Trial, 10/2/24, at 4-8 (emphasis added). At this point, trial proceeded as scheduled, commencing with the Commonwealth's first witness, Officer Stallings. *Id.* at 8.

Following trial, Wike was found guilty of the above-mentioned offenses. The trial court immediately sentenced Wike on the DUI—general impairment conviction to thirty days' to six months' incarceration with credit for time served, as well as imposed a $1,000.00 fine, ordered he participate in highway safety classes, suspended his license, required he utilize an ignition interlock device for one year, and ordered that he complete a drug and alcohol evaluation with any treatment if necessary. *See id.* at 60. On the restriction on alcoholic beverages conviction, Wike was sentenced to pay costs and serve ninety days of probation. *See id.* Wike filed a timely post-sentence motion, which the trial court denied. Wike filed a timely notice of appeal. Both Wike and the trial court have complied with Pa.R.A.P. 1925.

Wike raises the following issues for our review:

(1) Did the trial court err in not permitting Wike a short continuance to prepare to represent himself, essentially forcing him to proceed with assigned trial counsel?

(2) Was the evidence presented by the Commonwealth at trial insufficient to prove [DUI,] 75 Pa.C.S.A. § 3802(a)(1)[,] beyond a reasonable doubt when there was no evidence to prove that [] Wike had been driving, operating, or in actual physical control of the movement of a motor vehicle, especially in light of *Bold v. Department of Transportation, Bureau of Driver Licensing*, 320 A.3d 1185 (Pa. 2024)?

(3) Was the evidence presented by the Commonwealth at trial insufficient to prove restrictions on alcoholic beverages[,] 75

Pa.C.S.A. § 3809(a)[,] beyond a reasonable doubt when the legally parked vehicle was not located on a highway?

Appellant's Brief, at 7.

Wike first argues that the trial court erred when it did not permit him to have a short continuance to prepare to represent himself at trial. *Id.* at 15. Specifically, Wike asserts that he "was deprived of his [c]onstitutional right to represent himself and was left with no other choice than to proceed to trial with counsel that he did not want." *Id.* at 13.

The standard of review for the denial of a continuance is as follows:

Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Brooks*, 104 A.3d 466, 469 (Pa. 2014) (internal quotations omitted). The refusal to grant a continuance "is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." *Commonwealth v. Hansley*, 24 A.3d 410, 418 (Pa. Super. 2011). Further, Pa.R.Crim.P. 106(D) sets forth the time within which a defendant must move for a continuance:

[A] motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor[e] did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(D).

First, we find that Wike's request for a continuance to represent himself pro se was not timely raised. While the assistant district attorney was aware on the morning of trial that Wike sought to continue the matter, the continuance request was not raised to the trial court *until the trial had begun*. **See** N.T. Bench Trial, 10/2/24, at 4. Thus, in contravention of Rule 106(D), the continuance request was not made at least 48 hours before the start of the trial. **See** Pa.R.Crim.P. 106(D). Second, this case was already four years old when trial began because Wike failed to respond to a bench warrant. Wike knew two months in advance that the case had been scheduled for trial and he also knew that his case would be listed for trial almost six months prior to its commencement date. Finally, two continuances had already been granted in this case, one for the defense and one for the Commonwealth. We conclude, therefore, that the trial court did not abuse its discretion when it denied Wike's untimely request for a continuance. **Brooks**, **supra**.

Likewise, the trial court did not abuse its discretion in denying Wike's request to proceed pro se. The Sixth Amendment guarantees the right to waive counsel and proceed pro se. **See Commonwealth v. El**, 977 A.2d 1158, 1162-63 (Pa. 2009). However, the Pennsylvania Supreme Court "has recognized that a request to proceed pro se must be made in a timely fashion, and not for purposes of delay, and the request must be clear and unequivocal."

*Brooks*, *supra* at 474. A request to proceed pro se is timely when it is made before meaningful trial proceedings have occurred. *See El*, *supra* at 1163.

Trial begins "when a court has begun to hear motions which have been reserved for time of trial[,] when oral arguments have commenced[,] or when some other such substantive first step in the trial has begun." *Id.* at 1165 (citing *Commonwealth v. Dowling*, 959 A.2d 910, 915 (Pa. 2008)). Meaningful trial proceedings are "marked by a substantive, rather than a pro forma, event" which in the case of a bench trial can be a jury trial waiver. *El*, 977 A.2d at 1165, 1167.

> The Pennsylvania Supreme Court has recognized:
>
> There may be valid reasons why self-representation is appropriate or necessary, despite the fact that a defendant has indicated his willingness to proceed with a bench trial. While the competing concern to avoid delay and disruption is very real, the trial court should have some basis for concluding that such concerns are present. Where such concerns are not evident to the court, the best course is to make some inquiry, however brief, into the reason for the request. But inquiry is not mandatory in all instances, particularly where, as here, the timeline of the proceedings and circumstances surrounding them provide ample support for denying the request to proceed pro se.

*Id.* at 1167.

It is well established that the right to self-representation is not absolute. *See Brooks*, *supra* at 474. In *Brooks*, our Supreme Court noted that "defendants [seeking to proceed pro se] should not be permitted to unreasonably 'clog the machinery of justice' or hamper and delay the effort to administer justice effectively." *Id.* at 475. Moreover, "if a request to

proceed pro se is 'employed as a bargaining device rather than as a clear demand for self[-]representation,' its denial is not an abuse of discretion." ***Id.***

First, Wike's request to proceed pro se was untimely. Here, Wike waived his right to a jury trial, and a jury trial waiver is considered a substantive event. ***See El***, ***supra*** at 1166-67. Further, the bench trial had commenced. The combination of the jury trial waiver and the bench trial beginning are meaningful trial proceedings. ***See id.*** at 1163. There is no indication in the record that Wike ever requested to proceed pro se prior to his request after trial began. Additionally, even if the request were timely, the trial court did not abuse its discretion when it denied Wike's request to proceed pro se. The trial court inquired into Wike's request and determined that Wike sought to proceed pro se because he mistakenly believed that there was outstanding bodycam evidence that he had insufficient time to properly review. ***See*** N.T. Bench Trial, 10/2/24, at 4-5. However, after confirming with the Commonwealth, the trial court explained to Wike that all discovery had been produced and provided to him and his attorney. ***See id.*** at 5. The footage Wike was inquiring about did not exist, as bodycam worn by the first officer to arrive on the scene "was not functional when [the officer] arrived." ***Id.*** After determining that Wike had reviewed all the discovery with his attorney, the trial court gave Wike the opportunity to represent himself pro se without the continuance and, after having an off-the-record discussion with his attorney, Wike chose to proceed with trial counsel. ***Id.*** at 8. Therefore, Wike's

request to proceed pro se was properly denied. *See El*, *supra*. *See also Commonwealth v. Davido*, 868 A.2d 431 (Pa. 2005) (requesting to proceed pro se after being denied new counsel was merely "bargaining device" rather than clear and unequivocal demand to proceed pro se).

In his second issue, Wike challenges the sufficiency of the evidence, arguing that the Commonwealth failed to prove that he was operating or in actual physical control of his motor vehicle while impaired. Appellant's Brief, at 13. Wike claims that "there was no evidence presented that [Wike] had driven the vehicle prior to the arrival of the police," and that "the Pennsylvania Supreme Court in *Bold*[, *supra*] clarified that the implied consent statute (and by extension the DUI statute) aims to deter *driving* under the influence." Appellant's Brief, at 13. (emphasis in original). Wike argues that "*Bold* requires proof of actual driving beyond a reasonable doubt, not mere suspicion based on finding a person sleeping in a running vehicle." *Id.* at 24. We disagree.

In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *See Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014); *Commonwealth v. Neysmith*, 192 A.3d 184, 189 (Pa. Super. 2018). "This

- 11 -

standard is equally applicable to cases where the evidence is circumstantial[,] rather than direct[,] so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Swerdlow***, 636 A.2d 1173, 1176 (Pa. Super. 1994) (citing ***Commonwealth v. Hardcastle***, 546 A.2d 1101, 1105 (Pa. 1986)). Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence." ***Commonwealth v. Weitzel***, 304 A.3d 1219, 1224 (Pa. Super. 2023).

In ***Bold***, ***supra*** the Pennsylvania Supreme Court addressed whether there was sufficient evidence to prove that the defendant was guilty of DUI where police found Bold unconscious behind the wheel of a car. ***Bold***, ***supra*** at 1187. Bold was in the parking lot outside the bar where he had been drinking. ***Id.*** Bold's vehicle headlights were on and the engine was running, so that Bold could stay warm on a January night. ***Id.*** Bold's arresting officer admitted that he did not have any reasonable suspicion to believe that Bold had ever driven the car while intoxicated. ***Id.*** at 1188. There, the Court held that there must be objective evidence of control over the vehicle to arrest someone for a DUI. ***Id.*** at 1191.

Instantly, Wike was convicted under the same statutory subsection as in ***Bold***, subsection 3802(a), which provides:

**§ 3802. Driving under influence of alcohol or controlled substance.**

**(a) General impairment. –**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle **after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.**

75 Pa.C.S.A. § 3802(a)(1) (emphasis added).  In order to obtain a conviction under subsection 3802(a)(1), the Commonwealth must prove the following beyond a reasonable doubt:  "(1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him or her incapable of safe driving."  ***Commonwealth v. Palmer***, 751 A.2d 223, 228 (Pa. Super. 2000).

To satisfy the first element of subsection 3802(a)(1), this Court has determined that:

> The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. The Commonwealth can establish[,] through wholly circumstantial evidence[,] that a defendant was driving, operating or in actual physical control of a motor vehicle[.]  Courts review a combination of the following factors to determine whether a person had 'actual physical control' of an automobile:  the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances.

***Commonwealth v. Bathurst***, 288 A.3d 492, 501 (Pa. Super. 2023) (internal citations and quotations omitted).  ***See Commonwealth v. Brotherson***, 888

A.2d 901, 905 (Pa. Super. 2005) (holding physical control of vehicle can be based solely on circumstantial evidence).

Here, we conclude, in light of the totality of the circumstances, that the Commonwealth presented sufficient evidence that Wike was operating a motor vehicle when police located him. First, Officer Stallings testified that, upon arrival, the car was running and was in park, "but when I told [Wike] to turn the vehicle off[,] **he started reaching for the gear shifter and actually at one point put his foot on the gas pedal**[,] which caused the engine to rev because it was in park." N.T. Bench Trial, 10/2/24, at 13 (emphasis added). Additionally, the Commonwealth presented evidence that the engine was running and that the vehicle's key was in the ignition. *Id.* at 17. Although Wike argued that he was in his car for the air conditioning while waiting for his daughter to return because he was locked out of her house, the trial court did not believe this story and found Wike not credible. See N.T. Bench Trial, supra at 36, 59-60 (trial court stating "to believe that [Wike] went out in the car because it was a hot day so he could get the air conditioning running is just absurd for anyone to believe. He knew exactly what he was doing."). *See also* Trial Court Opinion, 1/17/25, at 17 (trial court stating "further, this court, as fact finder, did not find [Wike]'s testimony credible"). Additionally, unlike in *Bold*, Officer Stallings observed first-hand that Wike had actual physical control of the vehicle when Wike was "messing around" with the

vehicle's gearshifts and subsequently revved the engine of the vehicle. See N.T. Bench Trial, 10/2/24, at 13.

Based on the totality of the circumstances, including the facts that Wike fumbled with the gears, revved the engine, and had the keys in the ignition, there was sufficient evidence to conclude that Wike was operating the vehicle as he had actual physical control over the vehicle. *See* 75 Pa.C.S.A. § 3802(a)(1); *Brotherson*, *supra*; *cf. Bold*, *supra*. Accordingly, Wike is not entitled to relief on this claim.

Finally, Wike argues that the Commonwealth presented insufficient evidence to prove his conviction for restrictions on alcoholic beverages. Wike asserts that the "common-sense" principles of *Bold* should extend to his conviction on restrictions on alcoholic beverages under 75 Pa.C.S.A. § 3809(a). Appellant's Brief, at 14. Specifically, Wike claims that "the evidence presented failed to show that the legally parked motor vehicle in its parallel parking space was being driven on a highway or a roadway." *Id.*

Subsection 3809(a) provides:

**§ 3809. Restriction on alcoholic beverages**.

**(a) General rule.**--Except as set forth in subsection (b), an individual who is an operator or an occupant in a motor vehicle may not be in possession of an open alcoholic beverage container or consume a controlled substance as defined in the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or an alcoholic beverage in a motor vehicle **while the motor vehicle is located on a highway in this Commonwealth**.

75 Pa.C.S.A. § 3809(a) (emphasis added).

- 15 -

Even though the car was parked when the officers arrived, Wike had actual, physical control of the motor vehicle, which was on a public highway in the Commonwealth as defined by the Vehicle Code. *See* 75 Pa.C.S.A. § 9602 (defining "Highway" as "[t]he Pennsylvania Turnpike and every way or place, of whatever nature, open to the use of the public as a matter of right for purposes of vehicular travel. The term does not include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions."). Therefore, Wike was operating a motor vehicle on a public highway with open containers of alcohol. Thus, there was sufficient evidence to support Wike's conviction of violating restrictions on alcoholic beverages.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/04/2025

- 16 -